PER CURIAM.
This disciplinary proceeding by The Florida Bar against Robert A. Zinzell, a member of The Florida Bar, is before us on complaint of The Florida Bar and report of the referee. An appeal earlier filed in this cause was dismissed. We have received respondent’s “motion to dismiss referee’s report” but note that it was untimely filed. Other papers filed subsequently by Mr. Zin-zell in this Court are also untimely and without merit. See FLorida Bar Integration Rule, article XI, Rule 11.09(3)(a). Jur *347 isdiction vests in this Court pursuant to article V, section 15, Florida Constitution.
The referee’s findings and recommendations are as follows:

Findings of Fact as to each item of misconduct of which the Respondent is charged:

After considering all the pleadings and evidence before me, pertinent portions of which are commented upon below, I find:
The Florida Bar framed its Complaint in paragraphs instead of Counts. Therefore, the Referee will address each paragraph of the Bar’s Complaint. The Referee finds as to each paragraph as follows:
1. The Respondent, ROBERT A. ZIN-ZELL, was, at all times pertaining to the charges against him, a member of The FLorida Bar and subject to the jurisdiction and discipline of The Supreme Court of Florida.
2. The Complaint was filed at the direction of The Florida Bar.
a) An answer to the Bar’s Complaint was filed called Statement and Evidence submitted by Respondent.
b) Respondent was given due notice of Final Hearing to be held before the Referee on January 20, 1979. Notice of Hearing was served on the Respondent by a process server.
c) Respondent did not appear at the hearing nor was Respondent represented by counsel. The transcript of the Grievance Committee hearing shows that Respondent did not appear, nor was Respondent represented at the grievance level.
d) Respondent did not file any response to the Bar’s Request for Admissions.
e) Respondent had béen noticed for hearings on other occasions as reflected in the record, each time filing various delaying motions, which were denied by The Supreme Court.
3. During February of 1974, the Respondent was attorney for Mrs. Juliet V. Peacock.
4. 5, 6 & 7. ROBERT A. ZINZELL, Esq. prepared an “Agreement for Conveyance” and “Revocable Inter-Vivos Trust Agreement” which was executed by his client, Juliet V. Peacock on February 5,1974, naming him as Trustee.
The “Agreement” states: “The Trustee, Robert A. Zinzell ... is authorized to take and hold the properties for the purposes set forth herein”.
The Referee finds that the purposes set forth are “to make distribution of the net proceeds derived from this Trust Agreement to my beloved children ... as soon as it is feasible . . . after my demise”, ... to pay all my medical bills and costs of my estate . . . ”
The testimony shows and the Referee finds that Mrs. Peacock believed she was signing a will and that it was not her intent to convey her property to Mr. Zinzell.
However, the Agreement did convey certain real • properties to Mr. Zinzell, among which were Lots 27, 28 and 29 of Block 7, Coral Gables Craft Section as recorded in Plat Book 10 at Page 40, of the Public Records of Dade County, Florida.
On February 8, 1974, Robert A. Zinzell, Trustee of Juliet V. Peacock Trust Agreement executed a Warranty Deed conveying the said Lots 27, 28 and 29 to E-Z Rider, Inc., a Florida corporation. E-Z Rider, Inc. was owned by Robert A. Zinzell and Robert A. Zinzell was the President.
The Referee finds that Mrs. Peacock did not authorize this conveyance.
On March 21, 1974, a Quit Claim Deed was executed by Juliet V. Peacock to Robert A. Zinzell, Trustee, conveying the same above described property. However, no explanation of this deed was made by the Respondent nor the Bar.
8, 9 & 10. E-Z Rider, Inc., through its owner and President, Robert A. Zinzell, mortgaged Lot 27 of the above to Coral Gables Federal Savings & Loan Association for $26,250.00.
E-Z Rider, Inc., through its owner and President, Robert A. Zinzell, mortgaged Lots 28 and 29 of the above to A. G. Gresham for $27,975.00.
11 thru 17 inclusive.
*348 The testimony showed that Mrs. Peacock never knew of nor authorized her property being mortgaged by Mr. Zinzell or his company.
Mr. Zinzell, as President and owner of the E-Z Rider, Inc. allowed the said two mortgages to go into foreclosure. E-Z Rider, Inc. went bankrupt.
The Gresham mortgage was paid off by the Peacock family. The Coral Gables mortgage is being paid off by the Peacock family.
Mr. Zinzell never made any restitution nor any payment towards the reinstatement of these mortgages. Mr. Zinzell had also failed to pay the taxes on the mortgaged property.
The Referee finds that Mrs. Peacock did not have an interest in the E-Z Rider, Inc. corporation.
The Referee also finds that Mrs. Peacock is under a voluntary guardianship of her property with the Florida National Bank.
At the time she executed the Agreement in 1974, Mrs. Peacock was 77 years of age, showing her to be “approximately 80 years old” in 1977.
As a result of the foreclosure action and the Peacock family dealings with Mr. Zin-zell, the Peacock’s lost “in round figures, $75,000.00 to $80,000.00”.
[Citations to record omitted.]
CONCLUSION
Respondent Robert A. Zinzell, prepared a document for Mrs. Violet (sic) V. Peacock which he allowed Mrs. Peacock to believe was a will but which, in fact, was a trust which conveyed Mrs. Peacock’s property to Mr. Zinzell.
The only purpose of the trust was to pay expenses of Mrs. Peacock’s estate after her death and distribute the estate to her children.
Without Mrs. Peacock’s knowledge or consent, Mr. Zinzell used his trust power to convert and convey certain of her properties to a corporation owned and controlled by him, for his own use and purposes and not for the benefit of Mrs. Peacock or her children. He then mortgaged the properties. Neither Mrs. Peacock nor the beneficiaries of the trust received any of the proceeds of the mortgages. Mr. Zinzell and his company let the mortgages go into foreclosure.
Mrs. Peacock and her family paid or made arrangements for the redemption of said mortgages costing them $70,000.00.
Mr. Zinzell has never made explanation of nor made restitution whatsoever of those losses to the Peacock family.
Having been given ample notice on several occasions, Mr. Zinzell did not appear in person or by representation to defend the charges against him before the Grievance Committee or the Referee.
RECOMMENDATION AS TO FINDING OF GUILT
I recommend that the Respondent be found guilty of the following violations of his Oath as an attorney, the Integration Rules of The Florida Bar and Disciplinary Rule of the Code of Professional Responsibility, to wit:
IR 11.03(a) . . . the commission by a lawyer of any act contrary to honesty . whether the act is committed in the course of his relations as an attorney or otherwise ... is a violation of the moral conduct portion of the disciplinary rules governing the practice of law in the State of Florida.”
DR 1-102(A)(4) & (6). A lawyer shall not . engage in any conduct involving fraud, deceit or misrepresentation . engage in any other conduct that adversely reflects on his fitness to practice law.
DR 7-101(A)(3). A lawyer shall not . prejudice or damage his client during the course of the professional relationship .
RECOMMENDATION AS TO DISCIPLINARY MEASURE
I recommend that the Respondent be disbarred from the practice of law in the State of Florida.
*349 Respondent, upon due notice, failed to appear before the Grievance Committee and subsequently failed to appear before the Referee. No mitigating circumstances have been shown. The Respondent’s conversion of a client’s property to his own use and failure to make any restitution calls for the extreme penalty under the Integration Rules.
Having carefully reviewed the record, we find the allegations of the complaint and each count thereof to be proved by clear and convincing evidence, and we therefore approve the findings and recommendations of the referee.
Accordingly, respondent Robert A. Zinzell is hereby disbarred from the practice of law in the State of Florida. The disbarment shall become effective on August 4, 1980, thereby giving respondent time to close out his practice and take the steps necessary to protect his clients.
Costs in the amount of $397.00 are hereby assessed against the respondent.
It is so ordered.
SUNDBERG, C. J., and ADKINS, BOYD, ALDERMAN, and McDONALD, JJ., concur.